UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIDO VUKMAN,<br><br>    Petitioner,<br><br>    v.<br><br>STU SHERMAN, Warden,<br><br>    Respondent.<br>_____/ | No. C-14-4390 EMC (pr)<br><br>**ORDER OF DISMISSAL** |

## I. INTRODUCTION

Vido Vukman filed this *pro se* action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has moved to dismiss the habeas petition as untimely, and Mr. Vukman has opposed the motion. For the reasons discussed below, the Court dismisses the action as untimely because the statute of limitations deadline expired more than 16 years before Mr. Vukman filed his habeas petition.

## II. BACKGROUND

A. Procedural History

In 1996, Mr. Vukman was convicted in Alameda County Superior Court of 13 counts of assault with a firearm, two counts of discharge of a firearm at an occupied vehicle, one count of possession of methamphetamine, and one count of possession of a loaded firearm while in possession of methamphetamine. The jury found true the sentence enhancement allegations that Mr. Vukman had personally used a firearm during the commission of 15 of the charged offenses. On March 7, 1996, Mr. Vukman was sentenced to 28 years in state prison.

Mr. Vukman appealed. On February 7, 1997, the California Court of Appeal affirmed the judgment of conviction. *See* Docket # 7-1 at 2-3. Mr. Vukman did not petition the California Supreme Court for review.

On October 7, 1997, Mr. Vukman filed a habeas petition in Alameda County Superior Court. In the petition, he asserted that trial counsel provided ineffective assistance in that he failed to file a motion to suppress. On December 17, 1997, the Alameda County Superior Court denied the petition for failure to state a prima facie case for relief. *See* Docket # 7-3 at 26; *see also* Docket # 14 at 32 (superior court's 2013 order describing 1997 petition as having been "based on the claim of ineffective assistance of trial counsel for failure to research and file a motion to suppress").

More than 15 years later, Mr. Vukman restarted his efforts to challenge his conviction. On July 17, 2013, Mr. Vukman filed a habeas petition in Alameda County Superior Court. The Alameda County Superior Court denied the petition on September 17, 2013. The grounds for the denial were that the petition was unjustifiably delayed, was a successive petition, and failed to state a prima facie case for relief. *See* Docket # 14 at 32-41.

On November 18, 2013, Mr. Vukman filed a habeas petition in the California Court of Appeal. That petition was denied on November 21, 2013. *See* Docket # 7-2 at 2.

On March 10, 2014, Mr. Vukman filed a habeas petition in the California Supreme Court. That petition was denied on the merits on May 21, 2014. *See* Docket # 7-4 at 2.

Mr. Vukman then filed his federal habeas petition. His federal habeas petition was dated September 17, 2014, came to the Court in an envelope with a September 23, 2014 postmark, and was stamped "filed" on September 30, 2014. *See* Docket # 1 at 1, 18, 55. Applying the prison mailbox rule, the Court assumes for present purposes that Mr. Vukman gave his petition to prison officials to mail on the date he signed it, and deems the petition to have been filed as of September 17, 2014. *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003) (mailbox rule provides that *pro se* prisoner's filing of a document is deemed to have occurred when he gives it to prison officials to mail to the court).

B.     The Substance of The Federal Habeas Petition

Mr. Vukman's federal habeas petition has a single claim of ineffective assistance of counsel. He alleges that his trial counsel, Lincoln Mintz, provided ineffective assistance with regard to a potential plea bargain by failing to provide "accurate information relating to plea bargain negotiations with the prosecution that caused petitioner to turn down said plea bargain." Docket # 1 at 5. Specifically, Mr. Mintz informed Mr. Vukman in a December 31, 1995 letter that it was doubtful that the prosecution's plea offer would "get any better" than the 17-year sentence offer already rejected by Mr. Vukman "unless we're successful in knocking out some of the counts." Docket # 1 at 26. Allegedly to improve the prospects of receiving a more favorable plea bargain offer from the prosecutor, Mr. Mintz pledged to file two motions: (1) a motion under California Penal Code section 995 to challenge the sufficiency of the evidence to support some allegations as to a November 9, 1995 offense, and (2) a motion under California Penal Code section 1538.5 to suppress evidence relating to Mr. Vukman's arrest on November 20, 1995. Docket # 1 at 27. Attorney Mintz was not particularly optimistic: he noted that he was "not very hopeful of success on" the section 995 motion and, although the section 1538.5 motion was stronger, he could not "hazard a guess as to our chances" as to that motion. *Id.* Notwithstanding his pledge, Mr. Mintz did not file the motions and did not inform Mr. Vukman before trial that the motions were not going to be filed. *See* Docket # 1 at 7-8. Mr. Vukman contends that attorney Mintz's factual misrepresentations deprived him "of the right to accept the seventeen (17) year bargain offered by the prosecution." Docket # 9.

The federal habeas petition also discusses at length the fact that attorney Mintz failed to disclose at a post-trial *Marsden* hearing[1] that he was under investigation by the California State Bar at the time of Mr. Vukman's trial and previously had been disciplined by the California State Bar. According to a printout obtained by Mr. Vukman from the California State Bar's website, Mr. Mintz had several disciplinary problems over the years. Mr. Mintz had received a private reproval in 1995,

---

[1] *People v. Marsden*, 2 Cal. 3d 118 (1970), requires the trial court to permit a criminal defendant requesting substitution of counsel to specify the reasons for his request and generally to hold a hearing.

1  was suspended in 1997, was further disciplined in later years, and eventually was disbarred in
2  September 2000.  *See* Docket # 14 at 48-53.  There is no evidence that any of the disciplinary
3  proceedings were based on Mr. Mintz's representation of Mr. Vukman.  There also is no evidence
4  that, during his representation of Mr. Vukman, Mr. Mintz was suspended from practicing law.  The
5  information regarding the disciplinary proceedings is not cast as a second ineffective assistance of
6  counsel claim, and instead appears to be presented in an effort to show prejudice as to the ineffective
7  assistance of counsel claim described in the paragraph above and to obtain a delayed starting date
8  for the limitations period.

       Mr. Vukman argues that attorney Mintz's nondisclosure of the State Bar's actions against Mr. Mintz helps Mr. Vukman show prejudice for his claim that counsel was ineffective in connection with a potential plea bargain.  *See* Docket # 1 at 11.  Mr. Vukman's argument is not well developed, and consists of the following smattering of ideas:  "It would seem imperative for Mr. Mintz to have advised the trial court of his pr[o]blems with the State Bar, if for no other reason than ethical rules." *Id.*  Mr. Vukman further contends that the "result of the *Marsden* proceeding would have been different if the court had known about Mr. Mintz's disciplinary problems." Docket # 1 at 12.  Mr. Vukman also contends that "it is 'reasonably probable' that Petitioner could have at the very least received the aforementioned seventeen (17) year plea bargain that was lost due solely to counsel's failure to communicate with Petitioner." Docket # 1 at 12.  Mr. Vukman also contends that, because Mr. Mintz explained at the *Marsden* hearing that he did not know of a basis for filing a section 1538.5 motion, he never intended to file one and should not have told Mr. Vukman that he would file one.  "[I]f petitioner had thought for a second that his counsel was not being truthful with him regarding the plea bargain situation, Petitioner would have accepted the offered plea of seventeen (17) years instead of going to trial." Docket # 1 at 16.[2]

---

[2] The Court does not view the argument about attorney Mintz's disciplinary problems to be a separate claim for ineffective assistance of counsel because the petition does not indicate it is a separate claim.  Even if it was intended as a separate claim, it would not be dispositive because an attorney's suspension or disbarment does not show that an attorney's assistance was *per se* ineffective.  *See Young v. Runnels*, 435 F.3d 1038, 1041, 1043 (9th Cir. 2006) (attorney's subsequent disbarment, in proceedings that were commenced before she was hired to represent defendant and resulted in a recommendation of disbarment before defendant was sentenced, did not render her presumptively unable to provide effective assistance to defendant); *id.* at 1043 (regardless

Mr. Vukman also argues that the information about Mr. Mintz's troubles with the California State Bar is "newly discovered evidence" that calls into question his conviction and sentence. *See* Docket # 1 at 1.

### III. DISCUSSION

Petitions filed by prisoners challenging noncapital state convictions or sentences must be filed within one year of the latest of the date on which: (1) the judgment became final after the conclusion of direct review or the time has passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

A.   <u>The Limitations Period Started On March 19, 1997, When The Judgment Became Final</u>

The limitations period in this case began when the judgment became final upon "the expiration of the time for seeking [direct] review." 28 U.S.C. § 2244(d)(1)(A). Where, as here, a petitioner could have sought review by the state supreme court, but did not, the limitations period will begin running against him the day after the date on which the time to seek such review expired. *See Smith v. Duncan*, 297 F.3d 809, 812-13 (9th Cir. 2002), *abrogation on other grounds recognized by Moreno v. Harrison*, 245 F. App'x 606 (9th Cir. 2007) (limitations period began the day after time to seek discretionary review of California Court of Appeal's decision in the Supreme Court of California expired). Here, the California Court of Appeal affirmed the judgment of conviction on

---

of attorney's disciplinary troubles, *Strickland v. Washington*, 466 U.S. 668 (1984), applies and requires the petitioner to show deficient performance and actual prejudice); *United States v. Ross*, 338 F.3d 1054, 1056 (9th Cir. 2003) (suspension of trial counsel from practice shortly before the start of defendant's trial did not result in a *per se* denial of the Sixth Amendment right to effective assistance of counsel); *id.* at 1056 (regardless of an attorney's suspension or disbarment during or before trial, defendant must satisfy *Strickland*'s deficient performance and prejudice prongs to obtain relief); *see also United States v. Nickerson*, 556 F.3d 1014, 1019 (9th Cir. 2009) ("attorney's violation of a rule of ethics or professional conduct before trial does not constitute *per se* ineffective assistance of counsel"); *id.* at 1017-19 (no Sixth Amendment violation found because attorney's ethical violation in talking directly to codefendant after codefendant's counsel forbade such a communication did not result in *per se* ineffectiveness and defendant failed to show prejudice under *Strickland*).

1  February 7, 1997.  Under former Rule 28(b) of the California Rules of Court, the controlling rule at
2  the relevant time, Mr. Vukman then had forty days to seek review in the California Supreme Court.
3  Mr. Vukman did not file a petition for review.  Thus, his judgment became "final" on March 19,
4  1997.  The one-year limitations period began the next day, and the presumptive deadline for Mr.
5  Vukman to file his federal petition therefore was March 19, 1998.

6  Mr. Vukman argues that an alternative starting date for the limitations period should be used
7  due to the "newly discovered evidence" of Mr. Mintz's troubles with the California State Bar.  Mr.
8  Vukman suggests that a more appropriate starting date for the limitations period is "the date on
9  which the factual predicate of the claim or claims presented could have been discovered through the
10 exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  If § 2244(d)(1)(D) applies, the limitations
11 period begins "when the prisoner knows (or through diligence could discover) the important facts,
12 not when the prisoner recognizes their legal significance."  *Hasan v. Galaza*, 254 F.3d 1150, 1154
13 n.3 (9th Cir. 2001) (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)).  Mr. Vukman's
14 argument for this delayed starting date fails to persuade the Court for several reasons.

15 First, the factual predicate of Mr. Vukman's ineffective assistance of counsel claim was or
16 could have been discovered as of June 14, 1996 – before his conviction became final -- because Mr.
17 Vukman was at the *Marsden* hearing at which Mr. Mintz disclosed the relevant facts.  The heart of
18 Mr. Vukman's ineffective assistance of counsel claim is that Mr. Mintz failed to file the motions he
19 pledged to file that could have led to a more favorable plea offer from the prosecutor.  Mr. Vukman
20 knew or through the exercise of due diligence could have discovered no later than the June 14, 1996
21 *Marsden* hearing that those motions had not been filed as allegedly promised.  And he certainly
22 should have known that a plea offer was no longer a possibility: he had been convicted and was
23 awaiting sentencing at the time of the *Marsden* hearing.

24 At the June 14, 1996 *Marsden* hearing, Mr. Vukman expressed doubt as to whether attorney
25 Mintz had filed a suppression motion.  Mr. Vukman stated:  "On the motions [attorney Mintz] made,
26 *I'm not sure if he made the motions or not*, but he did not really talk to me about the motions to get
27 my side of the story on the motions for the confession and for the legal search and seizure, which I
28 had a lot of things to tell him about, which he never came and talked to me about them."  *See* Docket

# 1 at 42 (emphasis added). Attorney Mintz responded that "[n]o motion under 1538.5 was made because I did not know of a basis for a justiceable 1538.5 motion." Docket # 1 at 46. Attorney Mintz did not state that he had filed a California Penal Code section 995 motion to challenge the sufficiency of the evidence to support some allegations as to a November 9, 1995 offense. Mr. Vukman nonetheless knew that the charge that would have been the subject of the section 995 motion had not been dismissed, that he had been convicted of multiple counts, and that he had not received any plea bargain offer more favorable than the 17-year deal he already had rejected. Thus, as of the June 14, 1996 *Marsden* hearing, Mr. Vukman knew the important facts, i.e., that Mr. Mintz had not filed the section 1538.5 suppression motion and the section 995 motion either had not been filed or had been unsuccessful. Given that Mr. Vukman knew or with reasonable diligence could have discovered the factual predicate of his ineffective assistance of counsel claim as of the June 14, 1996 *Marsden* hearing, the delayed starting date of § 2244(d)(1)(D) does not apply. Section 2244(d)(1) provides that the limitations period runs "from the latest of" the four possible starting dates. Since the *Marsden* hearing occurred before the judgment became final, it would not benefit Mr. Marsden to use the *Marsden* hearing as the starting date for the limitations period. The limitations period started nine months later, on March 19, 1997, when the conviction became final upon the conclusion of direct review. *See* 28 U.S.C. § 2244(d)(1) (limitations period runs "from the latest of" the four possible starting dates).

Second, Mr. Mintz's disciplinary problems do not support a delayed start of the limitations period because they have no bearing on the ineffective assistance of counsel claim Mr. Vukman presents. An attorney's disciplinary problems do not establish ineffective assistance *per se*. *See* footnote 2, *supra*. In order to prevail on an ineffective assistance of counsel claim, a habeas petitioner must establish two things. First, he must demonstrate that counsel's performance was in fact deficient and fell below an "objective standard of reasonableness" under prevailing professional norms in his case. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The fact that Mr. Mintz had disciplinary problems before Mr. Vukman's

trial and eventually was disbarred simply does nothing to show that he engaged in deficient performance with regard to the plea bargain in Mr. Vukman's case and does nothing to show resulting prejudice. Due to the irrelevance of the disciplinary problems to the only claim in Mr. Vukman's federal habeas petition, Mr. Vukman is not entitled to a delayed start of the limitations period due to any delay in learning about those disciplinary problems.

Third, even if Mr. Mintz's disciplinary problems mattered, Mr. Vukman has not shown that Mr. Mintz's disciplinary problems that existed as of the time of his trial could not have been discovered through the exercise of due diligence in or about 1996 or 1997. Mr. Vukman argues that he could not have learned about the disciplinary problems because attorney Mintz concealed his disciplinary history from the trial court at the *Marsden* hearing. Mr. Vukman fails to recognize that the trial court did not actually ask attorney Mintz to recite his disciplinary history. At the *Marsden* hearing, the following colloquy took place:

> THE COURT: Mr. Mintz, just for the record, would you briefly summarize your experience in criminal practice?
>
> MR. MINTZ: I was admitted to the Bar in January of 1966 and have practiced primarily in Alameda County, appearing in criminal cases in Alameda County and approximately 30 other counties since that time. [¶] I have tried in excess of 150 jury trials; have tried well over 50 homicides to jury. [¶] I guess that's probably enough.

Docket # 1 at 43. It is true that Mr. Mintz did not mention that he had been disciplined in the past and was under investigation, but he also did not mention things such as his win/loss record in criminal cases or his continuing education efforts. Given that the disciplinary problems were not asked about, Mr. Mintz's failure to volunteer the information does not necessarily amount to wrongdoing. The transcript does not show active concealment or deception by attorney Mintz about his disciplinary troubles. Mr. Vukman further fails to show that he could not have learned of Mr. Mintz's disciplinary problems by simply asking Mr. Mintz during the time Mr. Mintz represented Mr. Vukman. A delayed starting date of the limitations period can not properly be based on Mr. Vukman's lack of knowledge of the disciplinary problems counsel experienced where Mr. Vukman has not demonstrated he acted with due diligence.

Fourth, even if attorney Mintz's disciplinary problems mattered and even if it is assumed that Mr. Vukman exercised diligence in learning about them, the materials in the record show that Mr. Vukman knew of those disciplinary problems several years before restarting his efforts to challenge his conviction in 2013. As Respondent points out, the footer on the printouts from the California State Bar's website containing the articles describing attorney Mintz's disciplinary history show that one article was printed on December 10, 2009 and another article was printed on January 17, 2010. *See* Docket # 1 at 32-37 (lower right corner of each page shows printing date). Mr. Vukman restarted his challenges to his conviction with a state habeas petition he filed on July 17, 2013, but that was three and a half years after he, or someone working on his behalf, printed out the articles that had the disciplinary information on which he purports to rely. Mr. Vukman's failure to explain in his federal habeas filings his multi-year delay in taking action after learning this information in December 2009 - January 2010 is inexplicable, especially given that the superior court made that very point in its September 17, 2013 order rejecting Mr. Vukman's 2013 state habeas petition. "[T]he exhibits to the petition regarding trial counsel's discipline date[] to 2009 and 2010. Petitioner fails to explain why he waited until 2013 to raise the issue of his trial counsel's disciplinary proceedings." Docket # 1 at 22 (Alameda County Superior Court's September 17, 2013 order denying petition for writ of habeas corpus, p. 4). More than three years passed after Mr. Vukman actually learned of attorney Mintz's disciplinary problems before Mr. Vukman filed any further challenge to his conviction. Thus, a delayed starting date until Mr. Vukman actually learned of the disciplinary problems would not help him because, even assuming that the disciplinary problems mattered and that Mr. Vukman exercised diligence in learning about them, his federal petition was filed more than a year after he learned about them.

To recap: The one-year statute of limitations period started the day after Mr. Vukman's conviction became final on March 19, 1997. *See* 28 U.S.C. § 2244(d)(1)(A). The presumptive deadline for Mr. Vukman to file his federal petition was March 19, 1998.

B.   Only A Couple of Months Of Statutory Tolling Applies

The one-year limitations period is tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Here, Mr. Vukman's first state habeas petition, filed in the Alameda County Superior Court on October 7, 1997, and denied on December 17, 1997, resulted in the limitations period being tolled for 71 days. Adding those 71 days of tolling extended the March 19, 1998 presumptive deadline for the filing of the federal petition to May 29, 1998.

Mr. Vukman's later state habeas petitions were not filed until 2013 and later, long after the limitations period had expired. By the time the second state petition (filed July 17, 2013), the third state habeas petition (filed November 18, 2013), and the fourth state habeas petition (filed March 10, 2014) were filed, the statute of limitations deadline had already passed. Those 2013-2014 state petitions that were filed after the limitations period had already expired had no tolling effect. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed).

C.   Equitable Tolling Does Not Apply

The one-year limitations period can be equitably tolled because § 2244(d) is not jurisdictional. *Holland v. Florida*, 560 U.S. 631, 645 (2010). '[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* at 655 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006).

Mr. Vukman argues that he is entitled to equitable tolling because attorney Mintz's disciplinary problems showed more than garden variety negligence, citing *Holland*, 560 U.S. at 652 ("a 'garden variety claim' of attorney negligence" does not warrant equitable tolling of habeas statute of limitations period). Mr. Vukman misunderstands the *Holland* case. Although *Holland* provides the legal rule for equitable tolling, the discussion of attorney misconduct in *Holland* has no

relevance to Mr. Vukman's case. *Holland* addressed the misconduct of an attorney who had been "appointed to represent [petitioner] in all state and federal postconviction proceedings," *id.* at 635-36, and concluded that equitable tolling was warranted because the attorney had abandoned the client by misleading him as to the deadlines, failing to respond to his inquiries about the status of the postconviction proceedings, and eventually missing the deadline to file a federal habeas petition. *See id.* at 636-43. *Holland*'s discussion regarding the degree of misconduct by an attorney that will support equitable tolling of the limitations period has no relevance to the present case because attorney Mintz was the trial attorney rather than an attorney hired to pursue post-conviction relief. *Holland* did not create a rule that especially bad attorney misconduct at trial warrants tolling of the limitations period; interpreting *Holland* to create such a rule would make superfluous the part of the test that requires that the extraordinary circumstance "'stood in [the petitioner's] way' and prevented timely filing of a habeas petition." *Id.* at 649. Neither Mr. Mintz's conduct in connection with the plea bargain nor his disciplinary problems amounted to an extraordinary circumstance that stood in the way of Mr. Vukman timely filing his federal habeas petition.

      Where a prisoner fails to show "any causal connection" between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim will be denied. *See Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005), *modified on other grounds by* 447 F.3d 1165 (9th Cir. 2006) (where prisoner failed to show causal connection between self-representation on direct appeal or physical and mental disabilities and inability to timely file petition, district court's finding that he was not entitled to equitable tolling where he had earlier filed a state habeas petition was not clear error). Equitable tolling is not warranted because Mr. Vukman has failed to show a causal connection between Mr. Mintz's disciplinary problems and Mr. Vukman's extreme delay in filing his federal habeas petition.

      Mr. Vukman also has failed to show that he was "pursuing his rights diligently," as is required for equitable tolling. *Holland*, 560 U.S. at 649. He fails to identify even a single step he took to pursue collateral relief between 1997 and late 2009. Further, even if Mr. Mintz's disciplinary problems mattered to Mr. Vukman's case, as noted, Mr. Vukman waited another three

11

1  and a half years after he learned of those disciplinary problems to file a state habeas petition.  He did
2  not act with "reasonable diligence," *Holland*, 560 U.S. at 653, required for equitable tolling.

3      Mr. Vukman has not satisfied either requirement for equitable tolling.  He therefore is not
4  entitled to any equitable tolling of the limitations period.

5      Finally, Mr. Vukman argues that his petition is not procedurally defaulted because the
6  California Supreme Court did not reject his state habeas petition in 2014 as untimely.  The argument
7  misses the mark because, as Respondent correctly points out, Respondent has not moved to dismiss
8  on the basis that the federal habeas petition is procedurally barred.  Instead, this federal petition is
9  denied as untimely because it was filed more than 16 years after the expiration of the habeas statute
10 of limitations period.

11     A certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c).  This is not a case in
12 which "jurists of reason would find it debatable whether the petition states a valid claim of the denial
13 of a constitutional right and that jurists of reason would find it debatable whether the district court
14 was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### IV. CONCLUSION

16     Respondent's motion to dismiss is **GRANTED**.  (Docket # 7.)  This action is dismissed
17 because the petition for writ of habeas corpus was not filed before the expiration of the habeas
18 statute of limitations period.  The Clerk shall close the file.

20     IT IS SO ORDERED.

22 Dated: September 1, 2015

                                                                   _____
                                                                     EDWARD M. CHEN
                                                                     United States District Judge